**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 06-4781**

───────────

UNITED STATES OF AMERICA,

                              Plaintiff - Appellee,

        versus

PHILLIP DANIEL DENKLER, a/k/a George Austin,

                              Defendant - Appellant.

───────────

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  James C. Dever, III, District Judge.  (5:05-cr-00264-D)

───────────

Submitted:  March 7, 2007            Decided:  July 10, 2007

───────────

Before WILLIAMS, Chief Judge, and KING and SHEDD, Circuit Judges.

───────────

Affirmed by unpublished per curiam opinion.

───────────

Thomas P. McNamara, Federal Public Defender, Devon L. Donahue, Assistant Federal Public Defender, Raleigh, North Carolina, for Appellant. George E.B. Holding, United States Attorney, Anne M. Hayes, Jennifer P. May-Parker, Assistant United States Attorneys, Raleigh, North Carolina, for Appellee.

───────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Phillip Daniel Denkler pled guilty to interstate transportation of a minor with intent to engage in criminal sexual activity, 18 U.S.C.A. § 2423(a) (West Supp. 2006) (Count One), and interstate transportation of a stolen vehicle, 18 U.S.C. § 2312 (2000) (Count Two). He received a sentence of 360 months imprisonment on Count One and a concurrent sentence of 120 months on Count Two. Denkler appeals his sentence, arguing that (1) the district court erred in considering the victim's statement to a federal agent because it lacked sufficient indicia of reliability to support certain fact findings that affected the sentence, see U.S. Sentencing Guidelines Manual § 6A1.3(a), p.s. (2005); (2) the district court clearly erred in finding that the victim's ability to appraise or control the situation was substantially impaired after Denkler gave her vodka to drink, USSG § 2G1.3, comment. (n.5(B)(I)); and (3) the district court abused its discretion by departing upward pursuant to USSG § 4A1.3, p.s., on the ground that criminal history category V substantially under-represented the seriousness of his criminal history. We affirm.

In August 2005, after serving an eight-month custodial sentence for taking indecent liberties with a thirteen-year-old girl, and then violating probation, Denkler began serving six months electronic house arrest in Rocky Mount, North Carolina. Within a few days, using the name "George," he had somehow come in

- 2 -

contact by telephone with a twelve-year-old girl, who told Denkler she wanted to leave home. On August 25, 2005, driving a car he had stolen from a former roommate, and in possession of a credit card stolen from his mother, Denkler picked up the victim.

On August 30, 2005, Denkler left the victim at a bus station in Des Moines after helping her call her grandparents from there. The victim told her grandparents that "George" had forced her to have intercourse multiple times. At a local hospital, the victim described the sexual contacts she had with Denkler to local authorities and a Federal Bureau of Investigation (FBI) agent, and identified him from a photographic line-up. She told investigators that Denkler had threatened to kill her if she did not have sex with him, and when she refused to perform oral sex on him, he choked her until she nearly passed out to make her comply. The victim said Denkler refused to let her call her grandparents during the trip. She told the FBI agent that Denkler slapped her and pulled her hair and made her drink a glass of vodka. She also said Denkler told her that, if he went to jail because of her, he would kill her when he got out, and that he would kill her if she was pregnant with his child and had an abortion or gave up the child.

The results of the medical examination were not made available to the investigators or, later, to the court, and investigators were not able to obtain independent evidence that Denkler used force or threats with the victim because she had showered and had

been swimming since the last time she and Denkler had intercourse, and the motel room where the last intercourse occurred had been cleaned.

Denkler was arrested on September 1, 2005, in Colorado. He told authorities that he and the victim had consensual intercourse several times during the trip, but denied using force or threats. He said that, on the first night they spent in a motel, they had drunk vodka together, after which the victim got "wild" and they had intercourse.

After Denkler's guilty plea, the probation officer calculated the offense level for the sex offense under U.S. Sentencing Guidelines Manual § 2G1.3 (2005) (Transportation of Minors to Engage in Prohibited Sexual Contact with a Minor). Denkler had 9 criminal history points, which placed him in criminal history category IV. However, because he qualified for sentencing as a repeat and dangerous sex offender against minors, see USSG § 4B1.5, he was placed in criminal history category V. The recommended advisory guideline range was 168-210 months imprisonment.

With advance notice to the parties, the district court decided to apply a cross reference in USSG § 2G1.3(c)(3) for offenses involving conduct described in 18 U.S.C.A. § 2241(a) or (b) (West 2000 & Supp. 2006), to USSG 2A3.1 (Criminal Sexual Abuse). The court determined that the cross reference applied

- 4 -

because it found as a fact that Denkler used force to engage in sexual conduct with the victim, see § 2G1.3, comment. (n.5(B)(i)(I)), and also forced her to drink vodka, which substantially impaired her ability to appraise or control her conduct, see id. (n.5(B)(i)(IV)). The offense level calculated under § 2A3.1 produced a higher offense level than § 2G1.3 or USSG § 4B1.5 (Repeat and Dangerous Sex Offender Against Minors); accordingly, the court applied it.

At sentencing, after the FBI agent who interviewed the victim in the hospital in Des Moines testified, the district court found as a fact that Denkler had used force to engage in sexual conduct with the victim. The court consequently determined that § 2A3.1 applied and recalculated the guideline range as 262-327 months. The court then departed upward, pursuant to USSG § 4A1.3, from criminal history category V to category VI, which increased the guideline range to 292-365 months. After considering the factors set out in 18 U.S.C.A. § 3553(a) (West 2000 & Supp. 2006), the court imposed a sentence of 360 months on Count One and a concurrent 120-month sentence (the statutory maximum) on Count Two. Alternatively, the court stated that, "even if category V were the appropriate criminal history category, the court would sentence Denkler, pursuant to a variance, to the same sentence of 360 months for Count One and 120 months for Count Two, to run concurrently," because his threats to kill the victim if he went to jail or if she

became pregnant and aborted or gave up the child increased the seriousness of the offense and were not accounted for in the offense level.

On appeal, Denkler first challenges the district court's application of § 2A3.1 on the ground that the district court erred in relying on information that lacked sufficient indicia of reliability when it determined that he used threats and force to engage in sex with the victim. Policy statement § 6A1.3(a) provides that, in resolving disputes about sentencing factors, the district court "may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy."

Denkler first contends that allowing sentencing courts to rely on hearsay violates the Sixth Amendment, citing <u>Crawford v. Washington</u>, 541 U.S. 36 (2004) (addressing right of confrontation at trial), but concedes that other circuits have held that <u>Crawford</u> does not apply to sentencing hearings. <u>See, e.g.</u>, <u>United States v. Chau</u>, 426 F.3d 1318, 1323 (11th Cir. 2005). Denkler principally argues that the district court should not have relied on the victim's statements to investigators, asserting that she wished to portray herself in a sympathetic light to her grandparents, and to place the blame for the anxiety she caused them on Denkler.

Denkler maintains that the district court ignored certain facts, such as, that the victim used the screen name "sexysatinangel" when text messaging on her cell phone, sexually explicit language was used in some of her text message exchanges, and the clothing she brought on the trip included lace thong panties, black lace panties, and a sleeveless shirt with the phrase "no boundaries" on it. Denkler also argues that the court ignored the fact that the medical examination of the victim revealed no indication of forcible intercourse, bruises, or serious injuries. He points out that the medical examination form states that the victim answered "Yes," when asked whether she had "any consensual coitus in the previous 72 hours." With respect to this question, the FBI agent who interviewed the victim testified at sentencing that the doctor who filled out the form told her the question was meant to determine whether there had been recent sexual activity, not whether it had actually been consensual. The agent also testified that the victim was cooperative with her and with the hospital staff, and was "very honest and very credible."

Even though authorities were unable to find evidence to substantiate the victim's statements, we conclude that her statements had sufficient indicia of reliability to support their probable accuracy. She submitted willingly to a medical examination and to interviews by local and federal authorities, and acknowledged that she had engaged in text messaging with other men.

- 7 -

Her statement to the FBI agent was consistent with her previous statement to local police. Therefore, the district court did not err in relying on her statements.

Denkler also contends that the district court clearly erred in finding that the victim's ability to appraise or control the situation was substantially impaired after she drank alcohol because the court lacked the information necessary to reach that conclusion. We need not decide this issue because the district court's finding that Denkler used force against the victim to engage in sex with her was supported by the victim's statement and that finding is sufficient to trigger the application of § 2A3.1.

Finally, Denkler maintains that the district court abused its discretion in departing upward from criminal history category V to category VI. In his view, the guideline sentence adequately accounted for his past criminal conduct and the court departed merely because it was dissatisfied with the length of the guideline sentence. Denkler does not challenge the court's determination that a departure was also warranted based on the high likelihood of recidivism.

Following United States v. Booker, 543 U.S. 220 (2005), we review a sentence for reasonableness. United States v. Hernandez-Villanueva, 473 F.3d 118, 123 (4th Cir. 2007). "When we review a sentence outside advisory sentencing range -- whether as a product of a departure or a variance -- we consider whether the

sentencing court acted reasonably both with respect to its decision to impose such a sentence and with respect to the extent of the divergence from the range . . . ." Id. A departure pursuant to § 4A1.3 is encouraged, provided that the criminal history category does not account adequately for his past criminal conduct or the likelihood that he will commit other crimes. United States v. Dixon, 318 F.3d 585, 588 (4th Cir. 2003).

Here, the district court decided that criminal history category V substantially underrepresented Denkler's criminal history, even though the application of § 4B1.5 had already raised him from category IV to category V. First, the court noted that Denkler was prosecuted in the juvenile court system in Kentucky for stealing his father's car. This finding is based solely on a statement to investigators by Denkler's estranged father that is contained in the presentence report. Although Denkler did not dispute it, no official record of the charge and its disposition was available. The court decided that the offense was similar to Count Two, transportation of a stolen vehicle, and that it could consider both juvenile offenses and prior similar conduct as a basis for departure. While not exhaustive, the factors suggested in § 4A1.3(a) as possible bases for upward departure include "[p]rior sentence(s) not used in computing the criminal history category," and "[p]rior similar adult conduct not resulting in a criminal conviction." USSG § 4A1.3(a)(2)(A), (E) (emphasis added).

- 9 -

Second, the district court considered the fact that Denkler had previously been charged with statutory rape (for which the court estimated he would have received a custodial sentence of at least 192 months), was permitted to plead guilty to a lesser offense, served a short custodial sentence, violated his probation and then, after being placed on house arrest, absconded to engage in the criminal conduct that resulted in his current prosecution. The background commentary to § 4A1.3 suggests that a defendant who has a history of serious offenses for which he has received very lenient sentences may be in a category that underrepresents his criminal history. The court found that Denkler fit this description.

Last, the court decided that category V did not adequately represent the likelihood that Denkler would commit similar crimes in the future. The court noted that Denkler had been prosecuted for sexual intercourse with a thirteen-year-old girl and a twelve-year-old girl, and for assaulting another female.[1] The court found that Denkler's conduct showed that he had no respect for the law and had "a strong tendency to revert to grossly inappropriate behavior toward females, particularly young girls." The court decided that category VI best represented his criminal history and likelihood of recidivism.

_____

[1]Denkler received one criminal history point for a sentence of 30 days custody and 36 months unsupervised probation after he was convicted in 2002 of misdemeanor assault on a female.

Denkler argues that category V adequately addressed his criminal history because it took into account his repeated sexual offenses involving minors, his custodial status when he committed the instant offense, and the recency of the prior conviction, and he emphasizes that he was awarded criminal history points for all his serious adult sentences. Denkler maintains that the court erred in assuming that he would necessarily have been found guilty of statutory rape had he gone to trial instead of pleading guilty to the lesser offense, and would automatically have received a sentence of 192 months imprisonment. He further maintains that his juvenile conviction for stealing his father's car was not counted because the sentence and the offense were not sufficiently serious, and that the district court decided otherwise without adequate basis for doing so.

After carefully considering Denkler's arguments, we conclude that the district court's decision to depart pursuant to § 4A1.3 was reasonable. Denkler had twice received lenient sentences in state court for offenses against females and, rather than comply with the conditions of probation, he initiated the instant offense. The district court based its decision to depart in part on the under-representation of Denkler's past criminal conduct and in part on the likelihood that he would commit future crimes. Taking the two factors together, the district court could reasonably conclude that an upward departure was warranted.

We must also consider whether the extent of a departure is reasonable. Hernandez-Villanueva, 473 F.3d at 123. Here, the court departed upward by one category. The resulting guideline range was 292-365 months, and the sentence of 360 months (the statutory maximum) was within the departure range. The court explained that it chose the maximum sentence in light of several factors set out in § 3553(a), specifically, "the need to protect the public, to deter this defendant, to reflect the seriousness of the offense, and to provide just punishment." The court further stated that it imposed a sentence at the top of the guideline range because of Denkler's "history of violence and predatory behavior, and the court's views on his likelihood to commit similar crimes if released earlier."

The top of the pre-departure range in this case was 327 months, thirty-three months less than the sentence imposed. While it is impossible to be say whether Denkler would exhibit the same predatory tendencies if he were released after a term of imprisonment 327 months, or another term of imprisonment that is less than 360 months, the court reasonably concluded that only the maximum sentence was adequate to protect potential victims and punish Denkler for the offenses he committed. We conclude that the length of the sentence was reasonable.

We therefore affirm the sentence imposed by the district court. We dispense with oral argument because the facts and legal

- 12 -

contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED